confused by Mr. Scott. I thought I was on the wrong case. Thank you. Our next argued case is United States v. Jackson. And counsel, you may begin whenever you're ready. Thank you. May it please the court. My name is Deborah DiOrio and I am counsel for appellant Isaiah Jackson. Your honors, there's two arguments that I'd like to focus on this morning. And the first argument is the fourth amendment argument. I'd like to point out that I think that both my colleague and the district court judge below were focused on the privacy intrusion aspect of the fourth amendment, whereas our argument was really on the common law trespassory rights that are encompassed. In other words, we were focused on not necessarily whether standing in his doorway, Mr. Jackson was in a public place, but rather in coming up to his porch and knocking on his door, there was a trespass on his curtilage. And the purpose, which is really unopposed by the record, the purpose for that trespass was to arrest him without a warrant. The government focuses a lot on the Santana case. And I'm just curious, do you think Santana survives after Jardines? I'm not sure it does survive after Jardines, unless you look at it in a very narrow focus in that it's only talking about privacy intrusion. But no, I think that it's definitely called into question by Jardines because Jardines focuses on the fact that there's a duality to this fourth amendment argument. And when you're talking about common law trespass, some of the holdings in Santana do not seem to apply. So it hasn't been explicitly overruled, but I would argue that it has been severely undermined by Jardines and also by Collins, the case where there was the motorcycle in the driveway. I was just going to say, is there anything in your view that distinguishes this case from London? Not London, the city, L-U-N-D-I-N, the 2016 case out of our court. The only thing that distinguishes that case, in my opinion, is that the intrusion in Lundin took place at 4am, whereas the intrusion in this took place at 9am. But again, that does not change at all the fact that they were focusing on whether or not there was implied consent to come up on the curtilage to arrest somebody. So I think it's a minor distinction as to timing, but that it does not change at all the precedential value of the Lundin decision. Does it matter whether they approach to search or they approach to arrest? Jardines was to search. I mean, when they're on the curtilage and they've got the dog and all, I mean, so they're really searching. They're doing a search on the curtilage. Going and knocking on someone's door when you don't intend to go in and do a search seems a little bit different. I don't think it's different because the whole issue at hand with these, like a knock and talk, for example, is whether or not there's implied consent from the resident for that trespass. Well, but if someone knocks at your door, he could have not answered, correct? And there would have been nothing they could have done. He could have not answered. Right. But in these cases, the Supreme Court has said that intent does actually matter. The intent of the officers in the trespass does matter. It's one of those narrow situations in which we do look at what is the intent of the officers. And the reason for that is that no reasonable homeowner would grant the police a trespass or an implied license to come to their door and make a warrantless arrest. That's not part of the implied license that's granted by the homeowner. And that is the right of the homeowner. So I think it does matter. And the Supreme Court has said it matters. And this circuit has said it matters. If we follow the logic of Lundin and hold that the arrest was held, does all the evidence necessarily fall with that holding? Or are there any reasons why the evidence otherwise could be admissible? I think the real problem is that the evidence that connects Mr. Jackson to the minor in this case, a lot of that evidence came from his cell phone and from his post-arrest statements. So I don't think on the record that you have before you that you can resurrect that, so to speak. Well, didn't they also at trial, didn't they also introduce evidence from the victim's cell phone, which would have been basically the same evidence just from a different device? They did. They did introduce quite a bit of evidence from the post-arrest statement and in his cell phone. So I think that it's quite a leak to say that the victim statement alone was sufficient. Has Mr. Jackson challenged here that his confession was not voluntary and that he consented to the search of the cell phone? My understanding is he's not challenging the voluntariness here of that. We challenged that below, but we are not pursuing that argument in this court. So if someone is arrested illegally or in violation of the constitution and they consent to a search of property thereafter, what's the result? The result is that you have to suppress, in my opinion, you have to suppress the fruits of that had he not made those statements, what would a reviewing court have done? What kind of application would the government have made to get that evidence? Because there's nothing in the record about that. And it's unclear at the time that all of this happened, how much of an investigation into the cell phone and into those matters had occurred. So I would just argue that we don't have on this record, that would be an improper remedy. If we were to hold that the evidence should have been suppressed, he can be retried on other evidence. I believe he could be. And I just want to briefly pivot to the jury instructions issues that I raised in my brief. And I know that there are several and they're somewhat intertwined. What I would like to say is that I believe that the court below erred in failing to give the theory of defense instruction. The focus in the defense in this case below was very, very narrow. It was specifically a challenge to whether or not there was proof of jurisdiction to interstate commerce. And so there was some evidence in the record to support that. The government did not introduce any expert witnesses. I've had so many cases below where they bring in somebody to talk about the phone connected to the cell site tower. We have this record, we have that record. We didn't have any of that. We had an Oceanside police detective who was absolutely not an expert testifying about things that were out of his bailiwick. And in fact, almost every single objection was sustained by the government, by the trial judge for lack of expertise. And haven't we held that using a cell phone and an internet app, just that constellation of facts by itself establishes interstate commerce as a matter of law? If you have those threshold pieces of proof, you have held that. But the issue is that, and I wish I had done this research. Well, there was a cell phone. It was, but your honor- And there was an internet app. There are ways to- Why do you need an expert? Because there are- But as a matter of law, why is there an expert? Because there are ways to put, and there are ways to use a cell phone without connecting to the internet. You can use a cell phone like a walkie talkie device when you're camping. There are ways to put applications on a cell phone without access to the internet. You can put them on with CDs and to say he had a cell phone, therefore he is guilty of the interstate commerce. There was a- But he used an app. He used an app and you don't use an app unless you're on the internet. Well, you can use an app. Again, you can load an app with a DVD and then you could use- It's not about loading it and how it got on the home. It's about using it. And we know that he was using it to communicate with this particular person. We know that he was using the cell phone. We do not know that the cell phone actually connected to either a cell site tower or that it connected through interstate commerce. For example, in my example that you can use a cell phone as a walkie talkie, the government failed to prove that the actual internet or that the cell site towers were used. They didn't put in any evidence of that at all. And so my argument is on the jury instruction issue, I cross-examined on that. I believe that there was slight evidence. There was enough evidence in there for me to get the jury instruction that I was asking for and pivoting away- What was the evidence that supported your theory? That the agent said he did not know where the cell phones were manufactured, whether they were manufactured out of the state of California, that he could not provide any testimony about whether or not the phones connected through a cell phone tower, nor could he provide any evidence that the cell phone, that the internet was actually used to communicate with the victim. And so again, I will concede that it's slight, but it's enough for me to get the jury instruction and the failure to give the jury instruction. And then I am now segwaying into my other argument when the jury came back with a question on that very same issue and the court repeated the discussion here, told the jury not to single out any instructions and then singled out that particular instruction. I think that's another aspect of error in this case. And I'd like to, I'm sure the courts have some questions, but if you don't, I'd like to reserve my time. I guess I have one quick follow-up then. So the instruction that the judge referenced in response to the jury's question, do you contend it's an inaccurate statement of law? I contend that if you single out that instruction without reference to the other instructions, that it placed too much of a focus on that instruction. That's not my question. Is it an inaccurate statement of law? No, but it's incomplete without the language that I requested on the substantial nexus argument. So it's incomplete and it focused them on one item and one item only. And I think it basically resulted in a directive verdict. In fact, the jury came back very quickly right after that instruction was given. Okay. You may reserve the rest of your time and we'll hear from the government. Thank you. Thank you, Your Honor. And may it please the court, Zach Howe on behalf of the United States. The district court did not err in denying the suppression motion here. There was no violation. Can I just take you directly to Lundeen? If pursuant to the Ninth Circuit's opinion in Lundeen, the officers could not have searched Mr. Jackson's home, what line of reasoning allowed them to arrest him? Certainly, Your Honor. So let me begin with what happens if the entirety of Lunden applies. And it's inconsistent with prior case law. So the first part of the Lundeen holding relates purely to objectively unreasonable behavior. It was showing up at 4 a.m. in the morning and knocking, and then ultimately arresting the defendant and searching his house. That part clearly does not help Jackson here because there is no objectively unreasonable behavior. So I think the part that we need to wrestle with is the second part, which talks about the subjective intent of the officers. Now, what the court says is that the Fourth Amendment analysis depends, quote, in part on the subjective intent of the officers. And in fact, the court looks mostly at objective factors to discern subjective intent anyway. So I'm not sure that portion of the opinion seems undisputed that they were going to arrest him. That was the intent. That seems undisputed on the record. Yes. Not to search. So does that make any difference? So I don't think it makes a difference if you are looking at subjective intent and saying that officers can't enter the property with subjectively improper intent, whether that is intent to arrest or intent to conduct a search. Counsel, that seems to me an argument that Lundeen is wrong, but not an argument that Lundeen doesn't apply. Here's what we said. The district court concluded that the officer's clear purpose was to determine whether Lundeen was home and if so, to arrest him. So far, that's the same as here. Thus, the officer's presence on Lundeen's front porch and their knock at his door constituted a presumptively unreasonable search. Again, that's this case. They were on the front porch. They knocked with the purpose to arrest him. Now, I understand that you disagree with Lundeen and you think maybe it was wrong, but I don't understand how it is at all distinguishable. I mean, the hour of the day is different, but that is irrelevant to what I just read to you. Well, your honor, I do think the court relied at least in part on the hour to discern the intent that you just read. But here, there's no question that that was their intent. They came to arrest him. There's no other reason for them to be there, and they could have gotten a warrant, but they didn't. So they're stuck with not having done so. You know, they may have come to the conclusion that about purpose from a different route, but I don't see any evidence in this case that they had any other purpose. So I absolutely agree the purpose here was to arrest. Let me maybe address, you know, what would happen even if the court disagrees with me that Lundeen can be distinguished. If that is the case, then I do think the portion of the opinion that you just cited should be construed as dicta. The reason I say that is not just because it wasn't necessary to the opinion, but because it was operating under a hypothetical set of facts. The district court in that case issued a 29-page long opinion in which it mentions the officer's subjective intent a total of zero times. Instead, it says it's going to conduct a quote objective examination, and then it repeatedly refers to objective facts. So when the Lundeen decision from this court talks about subjective intent, it is necessarily dealing with a set of facts that is not before the court. So that is the very definition. But you know, counsel, it's not just that little portion of the opinion. There's a long discussion of knock and talk and saying that it doesn't apply when the officers encroach upon the curtilage of the home with the intent to arrest the occupant. So it's not just a passing comment. It seems to me the whole basis of the opinion that if that's your purpose, your purpose is to come and arrest somebody at home and do not have a warrant, it's a violation of the Fourth Amendment to knock on the door and arrest. I mean, that's the whole discussion. It's not just the part that I read to you. Your Honor, I want you to assume that there was a violation of the Fourth Amendment. Is there any other ground to have denied the motion to suppress that is apparent on the record? Certainly, Your Honor. So I think in that case, the primary argument we put forward for why suppression should not have occurred would be the good faith exception, because not a single case, including London, involved officers who only had subjectively improper intent. Every single case that Jackson cites involved objectively unreasonable behavior. So officers would not have known that they couldn't rely on Supreme Court authority like Santana or this court's authority like Ben Eaton. Counselor, you're not answering my question, and perhaps I didn't make it clear. I want you to assume for purposes of my question that there was a violation of the Fourth Amendment and that the arrest was improper. Is there any other ground to sustain the denial of the motion to suppress, for example, inevitable discovery or some other thing? Well, I apologize if I wasn't answering the question, but the exception I would rely on is the good faith exception. And that's what I think I'm trying to articulate here, which is just officers would not have reasonably known that. If they read Lundin, though, aren't they bound by our own circuit precedent? I know you don't accept that Lundin is on all fours with this case, but if we disagree with you on that, how can the officers act in good faith when they are in contradiction to a recent Ninth Circuit case? So I think for two reasons. One is that the court in Lundin expressly says that there are, quote, two reasons that support its holding. And the first one, the primary analysis is all about the objectively unreasonable behavior, which is showing up at 4 a.m. So that portion of the opinion does not apply here. So they can ignore half an opinion. What are the two reasons in good faith? Is that your position? No. And the other part of the answer is this. When you have directly on point precedent dating back decades and decades, including Santana, Ben Eaton, Botero, and the scores and scores of opinions repeatedly saying that there are no contexts in which you look at the subjective intent of the officer, then I think officers acted in good faith by relying on those decades and decades of Supreme Court. So basically what you're saying is Lundin is wrong, but can officers in good faith think that? Is that okay to say, well, I'm not going to follow this Ninth Circuit case because I think it's wrong? Well, Your Honor, it's a tricky issue of moving away from good faith. What I would say is this. If that portion of the Lundin opinion is treated as binding, if you don't accept my argument, that's dicta, then you're faced with a scenario where you have to grapple with the conflict between Lundin on the one hand and decades of Supreme Court case law saying you do not consider subjective intent. Well, sure, but it is an unusual context in which we're looking at that, but Jardines at least leads in that direction potentially. Well, and I'm happy to address that opinion as well. The court in that case expressly says that it's precise question whether the search is objectively unreasonable, and then it does talk about purpose, but it says it's discerning purpose by looking at what the officer's conduct, quote, objectively reveals. So Florida v. Jardines is unequivocal in saying that this is an objective inquiry, and the court has affirmed that over and over, both after Jardines and before Jardines. Well, I don't know if I could read it the same way as you do, because it talks about the scope of a license to approach the home as being limited by the purpose of the approach. Whether the officer's conduct was objectively reasonable depends upon whether the officers had an implied license to enter the porch, which in turn depends upon the purpose for which they entered. Yes, Your Honor, and then the very next sentence says that their behavior, quote, objectively reveals an improper purpose. So it's clear the court is looking to objective behavior to discern. Well, here they're objectively and subjectively intending to arrest it, and so the question is whether that's a purpose for which someone impliedly gives permission on their porch. I think the argument is stronger if Lundin didn't exist, because I think Jardines is talking about the dog that's got the dog sniffing, right? And so they're actually searching on the curtilage before they're even getting to the house. But let me ask you this. Let's just hypothetically assume that I don't like Lundin, but if I can't feel, if I can't get around it, does the confession, and is there any independent way, as Judge Graber said, that, I mean, the confession, they're not challenging that it was voluntary, as far as that goes. Can a confession stand, or is everything the fruit of the poisonous tree? So we would concede that the confession would not stand. You would still have the victim's testimony and the victim's cell phone, which contains all of the images from the victim to Jackson. It still contains the evidence where she sends her address to Jackson, which of course leads him to go to the house and commit the abuse in this case. So I think there's a possibility that the verdict could still stand. Admittedly, this is a tough argument when throwing out the confession. So I admit that it's a tough one, but there is still a large amount of evidence that showed guilt in this case. If I could make one other point, if we really do find that Lundin, this portion of the opinion is operative, then I think you have to say, what do you do when that conflicts with earlier precedent, like Ben Eaton and Botero, and Supreme Court precedent, like all of the cases I've listed that deny inquiries into subjective intent? And the answer is, you apply, number one, Supreme Court precedent, because obviously, one panel can't overrule the Supreme Court. And number two, is you apply this court's earlier precedent, not the later. Cancel those cases, all predated Jardines or Hardiness or however that's relying on. And there's, anyway, so it all rises or falls on whether... And I want to sort of pick up on that point, because it's easy to say, well, Jardines is just a search case, and so we'll distinguish it on that grounds. But the way I read Jardines, it's shifting the doctrine on knock and announce. And because the earlier, and including Santana, talks about sort of reasonable expectation of privacy analysis, and in Jardines, they go a totally different way and say that cuts, and that whole question doesn't apply in this context, and takes, as your opposing counsel mentioned in her argument, sort of a property approach, a trespass approach. So even recognizing that we're dealing with different contexts in Jardines, there's doctrine being developed there that we can't just ignore. So two points on that, your honor. The first is that even if you did find a conflict, the Supreme Court has repeatedly said that you apply the on-point precedent and leave it for that court, the Supreme Court, to overrule its earlier authorities. And Florida v. Jardines did not overrule Santana. So you should apply Santana, let the Supreme Court overrule it. But the second point is this. Santana was decided after Katz, so the expectation test existed, and the property-based test has existed since the Fourth Amendment existed. So there's no grounds for concluding that Santana didn't address both. And its plain text makes clear that it did. It discusses the, quote, common law of property. It also discusses Katz's discussion of the home. And Katz itself, as well as numerous opinions since, including a three-justice concurrence in Florida v. Jardines, even say there's probably not a difference between the two tests in the case. Again, I'm just not sure there's a grounds for concluding that that case didn't address both tests. And it would be pretty shocking if the Supreme Court had, in fact, sub salientio, sweeped away an entire category of cases that came before it. You would expect it to actually say we look at subjective intent, which it didn't say. You would expect it to overrule all of these cases, which it didn't do. So I see my time is up. I'm happy to answer any other questions if the court has them. Otherwise, I would ask that the court defer. I believe we don't have any additional questions at this time. Your Honor, may I make a few points with my reserve time? I believe, yes, you certainly may. Thank you, Your Honor. I'd like to just point out that Jardines didn't happen in a vacuum. The term before Jardines came down, United States v. Jones was decided. And in that case, the Supreme Court, again, specifically said that the freedom from privacy intrusions is an additional right. It is not a substitute for common law trespassory rights. And that case involved a trespass on the curtilage of the home to look at the motorcycle. Also, in Collins v. Virginia, which is in 2018, that was a case, again, where privacy versus trespass was coming up because the Supreme Court refused to extend the automobile exception to a warrantless search of the curtilage. Now, I agree with Judge Forrest, it's a search as opposed to an arrest. But the underlying principles of what the Fourth Amendment protects are the same. And in fact, the trespassory part of the Fourth Amendment right is more, it goes back to the original intent of the Fourth Amendment. I mean, the privacy rights were actually something that came later and were crafted by case law. But the trespassory rights embodied in the Fourth Amendment are the very cornerstone of it. And the Supreme Court had been saying that after Santana. And they started with Payton v. New York. They ended with Jardines in 2013. But those are concerns that the courts have always been focused on, whether or not a homeowner can have an intrusion by law enforcement without a warrant. And I don't find the distinction that's being made by my opponent very compelling, because Lundin, again, whether we like it or not, Lundin is very clear. They discuss all of those cases, they discuss the evolution of it. And that case was decided in 2016. This search took place, I think, in 2017 or 2018. That is sufficient time for police officers to be trained on what the law is. And so I just don't think that the arguments that my opponent is making withstand scrutiny. We have Ninth Circuit law and we have Supreme Court law that both talk about what happens when police intrude upon either the curtilage or the home with an improper purpose that would not be expected or approved of or authorized by the homeowner. And unless the court has questions, I would submit on that. I don't believe that we do. Thank you, counsel. We appreciate helpful arguments from both of you in this very interesting case, and the case is now submitted. Thank you.
judges: Graber, Callahan, Forrest